**Winifred C. Rollins GAUVREAU and Lester Cohen, Plaintiffs,**

v.

**WARNER BROS. PICTURES, INC., United States Pictures, Inc., and Milton Sperling, Defendants.**

United States District Court
S. D. New York.

May 21, 1958.

Supplemental Opinion Sept. 23, 1958.

Gustave B. Garfield, New York City, for plaintiffs.

Mendes & Mount, New York City, for defendants.

DIMOCK, District Judge.

This is a motion by defendant, United States Pictures, Inc., to set aside the service of process upon it in this action. The action is one for infringement of the statutory copyright of a book enti-tled, "Billy Mitchell, Founder of Our Air Force and Prophet Without Honor", by a motion picture entitled "The Court Martial of Billy Mitchell", produced by United States Pictures, Inc., herein-after defendant, and distributed by War-ner Bros. Pictures, Inc. The summons was delivered to Milton Sperling, an offi-cer of defendant, United States Pictures, Inc., in New York City on February 7, 1958.

The validity of the service de-pends upon section 1400(a) of Title 28 U.S.C., which provides:

"(a) Civil actions, suits, or pro-ceedings arising under any Act of Congress relating to copyrights may be instituted in the district in which the defendant or his agent resides or may be found."

In order for a corporation to be "found" within the jurisdiction, it must engage in the same systematic and continuous activity necessary to make it "present" under the rule in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; Backer v. Gonder Ceramic Arts, D.C.S.D.N.Y., 90 F.Supp. 737, 738.

Defendant asserts in an affidavit of its secretary that it is a Delaware corpora-tion with its principal offices in Los An-geles, California. It states that it does not maintain an office in New York, it does not have any employee, agent or representative within the state nor does it pay any local taxes. Its business of producing motion pictures is allegedly carried on outside of New York State except for infrequent photographing of scenes here.

Plaintiff relies on an affidavit of its counsel who states that at the time when Milton Sperling was served he was in New York City to arrange for the re-lease of a motion picture entitled "Mar-jorie Morningstar" and that he had be-fore him at that time a publicity display for that motion picture. Infrequent visits to the jurisdiction by an officer of

a foreign corporation do not of course constitute such systematic and continuous activity as will subject it to local jurisdiction. Hutchinson v. Chase & Gilbert, 2 Cir., 45 F.2d 139, 142.

Plaintiff's counsel states also that Mr. Sperling makes frequent trips to New York City in connection with the purchase of material for motion pictures, their production, release, and distribution and came to New York City to arrange for the release and distribution of the alleged infringing film in this case. Defendant is also alleged to have produced at least one motion picture in New York State. These allegations, however, are all on information and belief.

Plaintiff's counsel contends also that defendant Warner Bros. Inc. is the agent of defendant United States Pictures, Inc. The contract on which plaintiff bases his assertion is not, however, before the court although defendant's counsel says that a copy is in the possession of plaintiff's counsel. In an affidavit of its controller Warner Bros. Inc. states that it has no relationship with United States Pictures, Inc., except by this contract which it contends does not establish an agency relationship.

■■ I do not believe that plaintiff's statements on information and belief constitute competent evidence upon which I can hold that defendant is "found" within this district. Affidavits on information and belief cannot be considered in summary judgment proceedings, Rule 56(e), F.R.Civ.P., Jameson v. Jameson, 85 U.S.App.D.C. 176, 176 F. 2d 58, 60, and subjecting a foreign corporation to local jurisdiction is hardly less serious.

On the other hand, defendant in its reply affidavit leaves many of plaintiff's allegations undenied and merely questions their source. It also states through its counsel:

"Certainly further facts should be elicited before a finding should be made that United States Pictures,

Inc., a foreign corporation is doing business in the State of New York and is subject to the jurisdiction of this court."

Plaintiff will therefore be given the opportunity to elicit further facts by examination of defendant United States Pictures, Inc., pursuant to the usual notice of examination of a party, through an officer having knowledge of its local activities, at Los Angeles, California, unless such officer is present in New York. Rule 30, F.R.Civ.P.

On the record before me plaintiff has not shown that defendant engages in systematic and continuous activity upon which a court could base a finding that it is "present". The motion to set aside service is therefore granted unless plaintiff, within 45 days after the publication of a notice of this decision in the New York Law Journal, submits to the court additional facts supplying the elements of doing business not now established before me.

So ordered.

## Supplemental Opinion

On May 21, 1958, I filed a memorandum granting a motion by defendant, United States Pictures, Inc., hereinafter United, to set aside the service of process upon it in this action if plaintiffs, within 45 days after the publication of the notice of the decision in the New York Law Journal, did not submit to the court additional facts supplying the elements of doing business which had not been previously established. Plaintiffs have made a submission consisting of affidavits and a photostatic copy of a contract between defendant United and defendant Warner Bros. Pictures, Inc., hereinafter Warner.

■ Plaintiffs have still not demonstrated to my satisfaction that Milton Sperling, an officer of United, has made such frequent trips to New York as would establish that United is doing business here. Nor have plaintiffs estab-

lished that "Marjorie Morningstar" was produced by United. On the contrary, defendant's attorneys have introduced affidavits of Milton Sperling and J. C. Yoss, an officer of Beachwold Pictures, Inc., stating that Beachwold and not United produced the picture in question. These affidavits are controverted only by the affidavit of plaintiffs' attorney, based on information and belief, and a statement of Jack L. Warner, president of Warner, in response to a question at a pre-trial examination. As I stated in my memorandum of May 21, affidavits on information and belief are not competent evidence upon which to hold that United is "found" within the district and to subject the foreign corporation to local jurisdiction. The statement of Mr. Warner was made incidentally in support of Mr. Warner's earlier statement that Warner Bros. Pictures, Inc., had nothing to do with the making of "Marjorie Morningstar". In any event Mr. Sperling and Mr. Yoss contradict Mr. Warner, and they would have first hand information about the matter.

Even if it were shown that defendant United was the party which made the film "Marjorie Morningstar" in New York I do not think that the evidence would be sufficient to form a basis for the conclusion that United was found within this district for the purpose of jurisdiction. Where a motion picture producing company goes on location in some jurisdiction outside of that where it is incorporated or has its principal place of business I do not think that activities in that connection, even though very extensive, bring it within the rule of International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, so as to make it "present" except perhaps with respect to controversies arising out of the activities in which it is there engaged. The present copyright suit has no possible connection with any activities of United in making the picture "Marjorie Morningstar" in New York.

On the earlier argument of this motion plaintiffs' counsel contended that defendant Warner was the agent of defendant United, basing its contention upon the contract relationship between the two. The contract was not at that time presented. Since my earlier memorandum, however, it has been submitted. It provides in general for the production of six motion pictures by United and their distribution by Warner. The picture, "The Court Martial of Billy Mitchell", which is the subject matter of this suit, is one of the six pictures referred to in the contract.

I can find no agency relationship based upon the terms of this contract. It is true that United's ultimate compensation depends upon the success of the distribution undertaken by Warner. United, however, has no voice in the manner of the distribution of the pictures. It strikes me as an arm's length transaction which differs little in principle from a lease where the rent is fixed at a percentage of the gross receipts of the tenant. Warner is no more an agent of United in distributing the films from its office in New York than the tenant under a percentage lease would be an agent of the landlord.

Perhaps the relationship comes nearer to a partnership or joint venture between United and Warner than an agency relationship. Nevertheless the facts do not make out a joint venture. United's function ceases with the production of the films. It is not associated with Warner in their distribution. The result might be different if United contracted with some third party to be responsible for the production and distribution of the films and the arrangement was that the actual distribution should be made by Warner. The case would then be more like Scholnik v. National Airlines, 6 Cir., 219 F.2d 115, where connecting air lines took over each other's equipment and issued through tickets and were held to be agents for each other. Here United made no commitment to any outsider and by contract limited its activities to the production of the films.

The motion to set side the service upon United is granted.